Good morning, and may it please the Court, I'm Elizabeth Newman, representing Mr. Burks. Your Honors, I'd like to address the adequacy of the inquiry in this case into Mr. Burks' request for new counsel. I think the case law is very clear about what a district court needs to do. The Cassell case, for example, talks about extended conversations. The prime case talks about the importance of follow-up questions. The district court there said, is there anything else you'd like to bring to my attention? Adelzo-Gonzalez and other cases talk about the importance of specific questions rather than vague, open-ended ones that leave the burden on the defendant to articulate his concerns. In short, a district court has to take the time and care to get to the bottom of the defendant's dissatisfactions. And that's, in this case, I think perhaps it was an unfortunate incident in the sense that the district court judge really took out after defense counsel for not doing their job and not getting on to this case sooner. And that defendant was there in the courtroom. Yes. And heard that. So you can understand why he might think that he was not being well represented. But they come in the next morning when he asked for new counsel, and it's really based on counsel's refusal to file motions which he wanted, and the judge explained why they were worthless. And then this is a case which is pretty slam-dunk. It didn't take a huge amount of preparation. He had a gun down his leg, and he was a felon. And during the trial then, once this was denied, she and counsel, he and she, the counsel, seemed to get along very well, and she was responsive to him, and he seemed to be satisfied. So I understand this whole line of cases which say that you must inquire in depth, and I have, I think that's correct in the ordinary case, but I'm not sure that this is the ordinary case. Well, thank you, Your Honor. Let me address the points that the Court has made, if I can remember all of them. First, as to what Mr. Birx's concerns actually were, the Court's correct that he began by talking about two motions that his attorney refused to file for him, and the district court said, well, that's correct. I would agree that those motions are worthless. But we don't know what else he had on his mind, Your Honor, because the Court didn't give him a chance to say anything. He said, and I want to state, and the Court just cut him off and said, wait a minute. You don't get to talk in here. The Court also said, I'm not here to answer your questions, but this was a colloquy in which the Court actually was there or should have been there to answer his questions. And so in response to the Court's comment that the issues that Mr. Birx raised were strategic ones, I think one of the responses is, well, that's all the district court heard because that's all he let him say. And the second answer to that is that while the attorney may have been legally absolutely correct in not raising those motions, the focus of the inquiry actually has to be something beyond counsel's competence or the soundness of her trial strategy. It has to be on the nature of the conflict between the two of them. Which brings me to what I think the Court's next point was, the relationship between Mr. Birx and his counsel during the course of the trial. And it's true there were no disruptions. And the record does show that they conferred, although, of course, the content of those conversations isn't known. But the answer to that, Your Honor, is that the district court was obliged to consider the state of the attorney-client relationship at the moment of the motion. That's what the Damore case says. And the Damore case explicitly rejected the government's suggestion that some sort of retrospective evaluation of the attorney-client relationship could be made at the point of appeal. So that's one answer to the Court's second question. The next answer to the Court's second question is that we don't really know what the content of those conversations was. And the third answer to the Court's question as to the overwhelming nature of the evidence and the relative simplicity of this case to prepare, there may not, in other terms, have been prejudice to Mr. Birx, since the evidence does seem to have been very strong, as the district court certainly believed. I would point out that the evidence wasn't quite so strong as to prevent Mr. Birx from actually being acquitted on one count. But also, prejudice isn't really an inquiry here. The Damore case says so, and I think it's Adelzo Gonzalez that also says that it doesn't matter whether the case was straightforward or simple or what. What matters was that Mr. Birx, excuse me, had a right to expect full preparation from his attorney at the moment the trial was supposed to begin. And due to the district court's extended discussion of what he perceived as counsel's deficiencies the day before, Mr. Birx had every reason to believe that he did not have that full preparation. And so that's the point at which this has to be evaluated, not later at the end of trial when it's clear that Ms. Hedl did get an acquittal on one count or when it's plain that the evidence against Mr. Birx was fairly consistent and hard to refute. It has to be evaluated at that moment. And so I think that is how I would answer the Court's concerns. And I think I got them all, did I? I think you did well. Okay. Thank you, Your Honor. Dealing with the timeliness issue, since the government did make a fair amount of that in its briefs, again, the issue is whether Mr. Birx had a reason for making the motion, the request, when he did make that request. And, again, he did because timeliness is not some kind of flat jurisdictional  makes clear that it's a kind of a nuanced, holistic, if you will, inquiry about whether the timing was reasonable or not. And here it was very understandable. And even if the motion was late, of course, the district court didn't say anything about how that factored into its consideration. In fact, it didn't mention timeliness at all. It just seemed to get irritated with Mr. Birx and say, I'm not here to answer your questions. We're getting the government back in here and we're calling the panel in. Unless the court has further questions, I'd like to save the balance of my time for rebuttal. Sure. Thank you very much. Thank you, Your Honor. Good morning. Good morning, Your Honors. My name is William Yu on behalf of the United States. In this case, the district court did, in fact, have sufficient information before it to realize that a legitimate conflict did not exist between the defendant and his attorney that represented a true breakdown in communications between the two. You're certainly not going to bless what the district court did, are you? That's not my intention today, Your Honor. No. What he said was, don't talk when I'm talking and don't talk yourself. I'm going to talk through your lawyer. And to talk through your lawyer whom you're trying to displace was certainly not appropriate. Isn't that the case? That may be the case, Your Honor. However, It is the case. Yes, Your Honor. However, I would argue that the district court, when the totality of circumstances of this particular case is observed, not merely the day of trial itself when the defendant first expressed his concerns with his attorney. However, as this court is aware, the district court had this case before it, a week prior to trial, during which the district court had an opportunity to observe the relationship between the defendant and his attorney and was also able to obtain knowledge of this case and its true nature. And in addition, the history of this case would bear out that the district court's decision was also correct. Specifically, in the week before trial at the status conference set for this matter, Your Honors, at this time the district court, excuse me, defense counsel did not indicate to the court or represent to the district court that there was any type of conflict between her and her client. And likewise, the defendant did not indicate any type of disagreement or conflict as well. She did ask for a continuance, however, to get prepared. That is correct, Your Honor. However, it was not due to any conflict or disagreement with her client. But that is correct, Your Honor. Was her statement that she was incapable of getting ready for the trial? At that time, that is correct, Your Honor. The record does reflect that defense counsel did state that. However, the record also does reflect that defense counsel was, in fact, able to prepare for trial. She was able to prepare and file a motion to suppress in this particular case in which she did work with the defendant, in which the defendant submitted a declaration in support of this motion, in addition, submitted a supplemental declaration in support of this motion. In addition, Your Honors, at the onset of the suppression hearing, which was the day before trial, again, the defense counsel and the defendant himself did not express any type of disagreement or conflict or any difficulty in communication between the two. Moreover, as the record will indicate, that during the suppression hearing itself, the defendant did confer with his attorney at least twice during the proceedings. Moreover, at the conclusion of the hearing, Your Honors, the record does indicate that the defendant did, in fact, have a working, productive relationship with his attorney, evidenced by the fact that the defendant did agree to sign a stipulation, which was presented to him by his attorney regarding his prior felony conviction. Moreover, the defense counsel indicated to the court that she was, in fact, prepared to proceed to trial the day prior by indicating that she was to reserve, excuse me, review the jury instructions between the parties, in addition to reviewing the firearm at issue in this case, which the government did provide to her for her review. I don't think there's any, in my mind, there's no question that she competently represented him, but that's not the issue. I understand, Your Honor. At the same time, though, in addition to the fact that she was prepared to proceed to trial, the record does indicate that defendant and defense counsel did not have any breakdown in communication or in their relationship in the weeks prior to the trial date. And, in fact, an indication of any type of difficulty or breakdown in any type of communication did not occur until the jury was about to be brought down to be empaneled. Now, again, reflecting to the first day of trial, Your Honors, the record will also indicate that the defendant and his attorney did, in fact, did not have any conflict or disagreement between them with which the district court was well aware and was able to make its determination when it denied defendant's request for substitute counsel. Specifically, at the onset of the first day of trial, the defendant first issued, his concern to the court. However, it wasn't a request for a new counsel. It was regarding those two procedural tactical issues, which the district court did, in fact, address. And, actually, the district court allowed the defendant to address the court personally as well. Moreover, with regard to defendant's comment that defense counsel should have passed this case a long time ago  reflects more of the disagreements with the court's ruling to deny the continuance of the trial date in this matter. And, again, the district court was able to determine that this did not represent a genuine conflict between the defendant and his attorney. Moreover, the defendant, in fact, did not indicate that he did not want to be represented by his attorney. It's until at the very end of these proceedings, which until after the district court indicated how it would rule on the two issues that he raised, he did at the very end. And, again, there's nothing in the record from defense counsel or defendant indicating that there was any difficulties or any issues with their relationship. And although the events that occur in this matter, Your Honors, subsequent to the court's denial of this substitution for counsel perhaps may not be considered. However, it does bear out the district court's decision to deny substitute counsel for defendant in the fact that defense counsel was able to present adequate and rigorous defense for the defendant. And as such, Your Honors, based on the totality of all the circumstances here in this case, which are comprised of not only of the events that occurred on the day of trial, but however, during the week prior to trial, the court had the district court had sufficient information before it to realize that there was not a true conflict between the defendant and his attorney. And consequently, the district court did act within its discretion when it denied the defendant's request for new counsel on the eve of trial. And on that, the government would submit, Your Honors, unless there are any further questions. Thank you very much, Mr. Yu. Thank you. Ms. Newman, you get the last word on this one. Thank you, Your Honor. Your Honor, one of the points the government made both here and in its briefs was that it wasn't really clear, at least that's its position. I believe that there was actually a request for new counsel. I would submit that there actually was. Mr. Burke's words are very clear. I do not want her as a lawyer. And that's on page 94 of the excerpts. And even if the court does think that that could have been articulated more clearly at the beginning of that colloquy, since this came right at the end, I would point the Court to the Franklin case in which there was never a formal motion for substitution of counsel, but this Court said that the defendant's actions and those of his lawyer made it clear that that was what was being requested. And that, furthermore, if it wasn't really clear, surely that just points to the inadequacy of the inquiry, since it was the district court's obligation to find out. Now, what you're asking for is a new trial. Is that not correct? Yes, Your Honor. In reading the colloquy about the sentencing, it seemed to me that the judge was pretty sensitive. And sometimes if we get what we ask for, things turn out worse in the end. I think you should maybe consider that. Thank you, Your Honor. I appreciate that. I appreciate that. And may I make one final point? That is that as to the good relations that allegedly existed between Mr. Birx and his attorney during trial, I would point to Mr. Birx's complaint that he had seen his attorney very little. The case had only existed for five weeks. He'd seen her twice. She'd been out of the office for three weeks in, you know, in the five weeks before trial, and that that points to a basic lack of trust and confidence in her abilities. Thank you, Your Honors, unless there are further questions. I don't think so. Thank you, Ms. Newman. Mr. Yu, thank you as well. The case has started to submit. We'll take a ten-minute recess.
judges: Bright , B. Fletcher, Silverman